UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**KATHY ADKINS,** *et al.*,

    **Plaintiff,**

v.                                                                                                  Civil Action No. 3:11cv334

**ENCORE CAPITAL GROUP, INC.,** *et al.*

    **Defendants.**

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO SEVER

Defendants, Encore Capital Group, Inc. ("Encore"), Midland Funding, LLC ("Midland Funding"), and Midland Credit Management, Inc. ("Midland Credit Management") (collectively, the "Midland Defendants"), by counsel, and pursuant to Fed. R. Civ. P. 21, submit the following memorandum in support of their Motion to Sever.

#### INTRODUCTION

This action involves 100 individual Plaintiffs and ninety-three alleged causes of action. All told, 540 claims have been pled against Defendants. Although Plaintiffs' claims are all asserted against the same Defendants, any substantive overlap ends there. By their nature (*e.g.*, allegations regarding specific telephone calls), Plaintiffs' claims are based on the particular facts of their individual debt collection efforts and not subject to mass adjudication. To establish even a *prima facie* case of liability on any claim, *each* Plaintiff will need to put on evidence regarding, *inter alia*, the documents received from Defendants; the amount and validity of the debt at issue; the contents of the documents filed in Virginia state court; the outcome of any state court collection proceeding; the time, date, place, and content of each instance of any alleged harassing telephone conduct or other allegedly violative behavior; and the nature of damages claimed, both actual and statutory.

Each of Plaintiff's claims will also be subject to factually-unique and varying defenses. To propose but one example, Defendants believe that the great majority of the dated allegations against them will be barred by the one-year statute of limitations under the Fair Debt Collection Practices Act. *See* 15 U.S.C. § 1592k(d) (establishing a one-year period of limitation from date of the violation). The date of each instance of challenged conduct will need to be discerned to determine the applicability of this defense. Also, the logistical implications alone of a joint trial for all 100 Plaintiffs (*e.g.*, 100 or more business days of evidence) would be truly overwhelming for the Court, the jury, and all parties involved on any number of levels. Fundamentally, the individualized inquiries and 100 "mini-trials" that would be required to resolve Plaintiffs' claims in one civil action present a paradigm example of where severance is necessary.

An analogous decision out of the Southern District of Florida (involving "only" thirty-seven plaintiffs) neatly encapsulates the problems with the 100 Plaintiff proposed joint action in this matter:

> In determining whether to exercise its discretion to allow joinder of numerous diverse Plaintiffs, with numerous different and individualized claims, as here, the Court has considered the letter of Rule 20(a) and the underlying policy considerations justifying joinder under that rule. Those are the promotion of efficiency, convenience, consistency and fundamental fairness. In doing so, the Court has determined that these policy considerations would be undermined, rather than promoted, by permitting this action to proceed as a 37-plaintiff, multiple count, mega case involving virtually hundreds of different variations of claims arising out of eight different investment vehicles associated with four different real estate projects. It is the Court's finding, after considering all of the arguments presented by the parties, that litigating what are in reality 37 separate lawsuits in one proceeding, while initially and facially seemingly appealing in terms of efficiency and convenience would, in fact, be very inefficient. Moreover, such a presentation to a jury would lead to jury confusion and prejudice to Defendants.

*Ravin v. Hockman*, 2007 U.S. Dist. LEXIS 33, at *15-16 (S.D. Fla. Jan. 3, 2007). To ensure a proceeding that is fair and efficient for all parties, Defendants' Motion to Sever must be granted, with the Court dismissing the claims of all but one of the Plaintiffs without prejudice.

STATEMENT OF ALLEGATIONS[1]

Ninety-three counts have been pled against the Defendants. Two of these ninety-three counts purport to join all of the Plaintiffs under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. (Counts One and Eight), and two other counts purport to assert FDCPA claims for eighty-two of the Plaintiffs (Counts Two and Five). Count Three is pled on behalf of five Plaintiffs, Count Four on behalf of fifteen Plaintiffs, Count Six on behalf of sixty-two Plaintiffs, and Count Seven on behalf of three Plaintiffs. Of the remaining eighty-five counts, eighty-three are claims by individual Plaintiffs under various provisions of the FDCPA. The remaining two counts involve a subset of eight Plaintiffs under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. A brief description of Plaintiffs' claims is as follows:

- Count One - 15 U.S.C. § 1692(e): Count One is pled on behalf of all of the Plaintiffs. Count One vaguely alleges that Defendants used "false, deceptive and misleading representations or means in connection with the collection of the alleged debt from the Plaintiffs."

- Count Two - 15 U.S.C. § 1692(e)(2): Count Two is pled on behalf of eighty-two Plaintiffs. Count Two alleges that Defendants "falsely represented the character, amount and/or legal status of the alleged debts in the 'Summary Screens' mailed to Plaintiffs."

- Count Three - 15 U.S.C. § 1692e(10): Count Three is pled on behalf of five Plaintiffs. Count Three alleges that Defendants "used false or deceptive means in an attempt to collect a debt by . . . attaching generic cardholder agreements or other account documents to the 'Warrant in Debt' and then claiming that these were the actual agreements or account documents for that specific account."

- Count Four - 15 U.S.C. § 1692e(10): Count Four is pled on behalf of fifteen Plaintiffs. Count Four alleges that Midland Funding and Midland Credit used false and deceptive means to collect a debt by attaching "invoices or other documents to the Personal Knowledge Affidavit."

---

[1] The Statement of Allegations section is based on the allegations contained in the Amended Complaint (the "Complaint"). Defendants do not agree with the allegations in the Complaint, but, for the limited purpose of this Motion and Memorandum, they are accepted as true.

- Count Five - 15 U.S.C. § 1692e(11): Count Five is pled on behalf of the same 82 Plaintiffs as Count Two. In Count Five, Plaintiffs claim that Defendants violated § 1692e(11) by failing to disclose on the Summary Screens that the "Defendants were debt collectors, that they were attempting to collect a debt, and/or that any information obtained would be used for that purpose."

- Count Six - 15 U.S.C. § 1692e(11): Count Six is pled on behalf of sixty-two Plaintiffs. Count Six alleges "at the time that the collection lawsuit was filed," Defendants sent to Plaintiffs a "Personal Knowledge Affidavit," which failed to inform Plaintiffs that it was prepared by a debt collector.

- Count Seven - 15 U.S.C. § 1692e(11): Count Seven is pled on behalf of three Plaintiffs. Count Seven alleges that "at the time that the collection lawsuit was filed," Defendants sent to Plaintiffs a "MCM Statement," which failed to inform Plaintiffs that it was prepared by a debt collector.

- Count Eight - 15 U.S.C. § 1692a: Count Eight is pled on behalf of all of the Plaintiffs. Count Eight alleges that Defendants "failed to timely send the Plaintiffs a written notice that complied with the requirements of § 1692g(a) and which informed them of their right to request verification of the debt."

- Counts Nine through Ninety-One (excluding counts Nineteen, Twenty-Four, Twenty-Five, Thirty, Thirty-Seven, Fifty, and Sixty-Nine): Each such count is pled on behalf of an individual Plaintiff. These claims assert the following violations of the FDCPA, which relate to Defendants' alleged "numerous" instances of "harassing" and improper telephone conduct, both with respect to the individual Plaintiffs and unnamed third parties: 15 U.S.C. §§ 1692b(2), 1692c(b), 1692f, 1692d, 1692c(a)(3), 1692c(a)(2), 1692e(4), 1692e(7).

- Counts Nineteen, Twenty-Four, Twenty-Five, Thirty, Thirty-Seven, Fifty, and Sixty-Nine - 15 U.S.C. § 1692e(2): Counts Nineteen, Twenty-Four, Twenty-Five, Thirty, Thirty-Seven, Fifty, and Sixty-Nine are each pled on behalf of an individual Plaintiff. These counts assert a violation of § 1692e(4) by claiming that Defendants included an amount in the "Warrant in Debt" that was "not legally owed" by Plaintiffs.

- Counts Ninety-Two and Ninety-Three – 42 U.S.C. § 227(b)(1)(B): Counts Ninety-Two and Ninety-Three are asserted on behalf of eight Plaintiffs. Counts Ninety-Two and Ninety-Three allege that Defendants violated the TCPA through the use of an automatic telephone dialing system or artificial voice technology to call Plaintiffs.

(Compl., at ¶¶ 99-478.) All Plaintiffs request actual and statutory damages, attorney's fees, and costs. *See id.*

#### STANDARD OF REVIEW

The propriety of joinder of multiple plaintiffs in a single lawsuit is governed by Fed. R. Civ. P. 20(a). Under Rule 20(a), joinder is only permitted when claims are asserted "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any questions of law or fact common to all those persons will arise in the action." *Id.* Both requirements must be fulfilled to satisfy the Rule. *E.g.*, *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

Moreover, even if both requirements of Rule 20 are satisfied, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (citations omitted); *accord United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) (joinder is encouraged only to the extent "consistent with fairness to the parties"). If a court concludes that joinder is inappropriate under Rule 20 it has broad discretion under Fed. R. Civ. P. 21 to sever parties or claims. *E.g.*, *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988) ("The decision whether to grant a severance motion is committed to the sound discretion of the trial court.").

#### ARGUMENT

**I.    The highly-individualized nature of the claims of all 100 Plaintiffs, which discredits any assertion of "commonality" under Rule 20(a), requires the severance of the action under Rule 21.**

Of the ninety-three counts in the Complaint, eighty-three are pled on behalf of individual Plaintiffs regarding collection activity that is admittedly unique to their accounts, *e.g.*, claims that Defendants misrepresented the character, amount, and/or legal status of the debt, included amounts in the warrants-in-debt that were not legally owed, etc. (Compl., at ¶¶ 139-470.) Two additional counts are pled on behalf of a small subset of eight plaintiffs alleging harassing telephone conduct that is also unique to them. (*Id.* at ¶¶ 471-478.) The remaining eight counts,

5

which are pled on behalf of widely-varying groups of Plaintiffs, concern documents and/or court pleadings that were allegedly mailed to each Plaintiff with respect to their individual state court collection actions. (*Id.* at ¶¶ 99-138.) Relative to each Plaintiff, none of these claims arise out of the same "transaction or occurrence" with "common" questions of law or fact, and none are appropriate for mass resolution under Rule 20.

Under Rule 20, a common defendant in and of itself is insufficient to satisfy the same transaction or occurrence requirement. *See, e.g.*, *Saval v. BL Ltd.*, 710 F.2d 1027, 1031-32 (4th Cir. 1982). "Similar claims" alone also do not generate commonality under Rule 20. *See, e.g., Lover v. District of Columbia*, 248 F.R.D. 319, 320 (D.D.C. 2008) (joinder inappropriate even though each plaintiff asserted a § 1983 *Monell* claim); *accord Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) ("[T]he mere fact that . . . claims arise under the same general law does not necessarily establish a common question of law or fact" under Rule 20(a)). And, even if the legal theory is the same, there is a "complete lack of common questions of fact or law" when the allegations are based "wholly upon the separate acts of the defendant with respect to each plaintiff." *Smith v. North American Rockwell Corp.*, 50 F.R.D. 515, 524 (N.D. Okla. 1970).

Thus, it is settled law that "[j]oinder is not appropriate where . . . the claims [of plaintiffs] involve their own 'peculiar circumstances.'" *Cunningham v. Flowers*, 218 F.R.D. 453, 454 (D. Md. 2003) (denying joinder of claims alleging First-Amendment violations) (quoting *Randleel v. Pizza Hut of Am.*, 182 F.R.D. 542, 545 (N.D. Ill. 1998); *see also Coalition for a Sustainable Delta*, 2009 U.S. Dist. LEXIS 111743, at *7 (E.D. Cal. Nov. 17, 2009) ("Where claims require significant 'individualized attention,' they do not involve common questions of law or fact."). In such matters, "each plaintiff's situation would have to be considered in detail . . . [and] the determination of facts and the scope of testimony with respect to one plaintiff would have little relevance to issues raised by another plaintiff." *Cunningham*, 218 F.R.D. at 455 (citing *Martinez*

*v. Safeway Stores, Inc.*, 66 F.R.D. 446, 448 (N.D. Cal. 1975)). Thus, permitting joinder in such cases would not only contravene the plain language of Rule 20, it would run afoul of the purpose of that rule "to promote trial convenience and expedite the final determination of disputes," *Saval*, 710 F.2d at 1031, because, as a practical matter, such cases would present multiple "trials confusingly squeezed into one." *Cunningham*, 218 F.R.D. at 455.

Accordingly, federal courts, including those within the Fourth Circuit, have consistently severed or denied joinder of claims requiring individualized factual determinations to assess liability, even when some factual overlap exists among the plaintiffs with respect to the named defendants. *See, e.g., Saval*, 710 F.2d at 1031-32 (affirming decision that allegations of fraud and breach of federal warranties concerning similar problems with automobiles failed to satisfy transactional test under Rule 20(a)); *Martinez v. Haleas*, 2010 U.S. Dist. LEXIS 31498, at *8-9 (N.D. Ill. Mar. 30, 2010) ("While there are similarities between each of the arrests in question -- Haleas was the arresting officer in each and each arrest was for DUI -- all of the arrests took place on different dates, in different locations, and under distinct circumstances during a two year period."); *Funtanilla v. Tristan*, 2010 U.S. Dist. LEXIS 30466, a*15 (E.D. Cal. Mar. 29, 2010) ("Each of Plaintiff's seven claims allege unrelated actions, and Plaintiff's alleged injuries resulting from each action are distinctly different. The fact that all of the defendants share an employer and place of employment does not establish any common question of fact. Each of Plaintiff's claims will require its own review of entirely separate events."); *Goldman v. Kenworthy*, 2011 U.S. Dist. LEXIS 73442, at *3 n.1 (E.D.N.C. July 6, 2011) (denying joinder, and holding that "[b]ecause many of the prospective plaintiffs are incarcerated at different institutions, the court anticipates that the facts and circumstances surrounding their individual claims will vary."); *Woltz v. Bailey*, 2009 U.S. Dist. LEXIS 73652, at *3 (W.D.N.C. Aug. 11, 2009) ("No one transaction, occurrence, or series of transactions or occurrences is common to all

Defendants. Each individual alleges separate and distinct medical issues. Moreover, the issue of actual injury will be separate and distinct for each plaintiff. As such, they may not join together as plaintiffs in a single action and the Complaint is dismissed."); *Jenkins v. City of Portsmouth*, 2006 U.S. Dist. LEXIS 85482, at *13 (E.D. Va. Nov. 27, 2006) (despite the defendants' "membership and/or status as City employees," there was insufficient factual overlap to allow joinder); *In re Rezulin Prods. Liab. Litig.*, 168 F Supp.2d 136, 144 (S.D.N.Y. 2001) (finding misjoinder because plaintiffs, who ingested the same drug, had different exposures to the drug, different injuries, and different medical histories).

Plaintiffs' claims against the Defendants are necessarily individualized, bearing only superficial similarities insufficient to ground joinder. The Complaint sets forth facts from which the Court can readily discern that each Plaintiff is challenging *separate* encounters with the Defendants based on individual debts. An illustration of the proposed trial process with respect to one Plaintiff, Rebecca Smith ("Smith"), substantiates this contention. In addition to the allegations regarding Defendants' debt collection practices concerning the mailing and filing of documents, Plaintiff's counsel pleads the following factual allegations with respect to Smith:

> Defendants placed several calls to Plaintiff Rebecca Smith's place of employment regarding the debt. On each such occasion, Rebecca Smith would inform the caller that she was not allowed to receive personal phone calls at work and asked the callers not to call her at work again. Despite this demand that the Defendants should stop calling her at the office, Defendants continued to make phone calls to Smith's place of employment regarding her debt. She experienced substantial damage as a result. Furthermore, Defendants placed numerous phone calls to Rebecca Smith's home, often multiple times per day. These excessive phone calls are clear indications of Defendants' intent to annoy, abuse, and harass her.

(Compl., at ¶¶ 87-89.) On the basis of these allegations, Smith pleads the following causes of action against the Defendants under the FDCPA:

> **Count One**: 15 U.S.C. § 1692(e) (Defendants' making "false, deceptive and misleading representations" regarding her debt);

   **Count Two**: 15 U.S.C. § 1692(e)(2) (Defendants' falsely representing "the character, amount and/or legal status of the alleged debt in the 'Summary Screens'");

   **Count Five**: 15 U.S.C. § 1692e(11) (Defendants' failure to identify themselves as a debt collector on the "Summary Screen" mailed to Smith);

   **Count Six**: 15 U.S.C. § 1692e(11) (Defendants' failure to identify themselves as a debt collector on the "Personal Knowledge Affidavit" mailed to Smith);

   **Count Eight**: 15 U.S.C. § 1692g(a) (Defendants' failure to send Smith a written notice informing her of right to request verification of the debt);

   **Count Seventy-Six**: 15 U.S.C. § 1692(b) (Defendants' "repeated communications" with third parties regarding Smith's debt);

   **Count Seventy-Seven**: 15 U.S.C. § 1692c(b) (Defendants' "repeated communications" with unnamed third parties regarding Smith's debt);

   **Count Seventy-Eight**: 15 U.S.C. § 1692d (Defendants' "abusing and harassing" Smith by placing numerous and repeated calls to her home); and

   **Count Seventy-Nine**: 15 U.S.C. § 1692f (Defendants using "unfair means" to collect Smith's debt).

(Compl., at ¶¶ 407-422.) From these claims, Smith seeks actual and statutory damages. *See id.*

  The nature of these claims will require (at least) adducing the following evidence at trial, all of which relates *only* to Smith's account: (1) the nature of the "false deceptive or misleading" debt collection practices of the Defendants; (2) a review of the Summary Screen, which will then have to be referenced against the exact amount of the debt proved to be owed to assess whether Defendants "falsely" represented the "character amount and/or status" of the debt; (3) a review of the "Summary Screen" and the "Personal Knowledge Affidavit" to determine whether those documents complied with § 1692e(11); (4) the identification of the "initial communication" sent to Smith, along with an analysis of whether that communication complied with the requirements of § 1692g(a), along with each of its five enumerated subsections; (5) a full evidentiary analysis of each of Defendants' "repeated" telephone contacts with Smith and other unnamed third parties, including a subjective analysis of whether such conduct was "abusive or harassing," to

assess the claimed violations of §§ 1692(b), 1692c(b), and 1692(d); (6) an analysis of the statute of limitations and other affirmative defenses with respect to each instance of challenged conduct; and (7) an assessment of Smith's damages, including whether she has proved her actual damages (*e.g.*, emotional damages) with the required degree of reasonable certainty, along with argument concerning the amount of statutory damages, if any, Smith should be awarded. Even more, all of these allegations will be contested by both sides through documentation and testifying witnesses (both fact and expert, through direct and cross examination).

None of Smith's claims are susceptible to generalized proof in a manner that could even possibly permit the resolution of these claims in the context of ninety-nine other Plaintiffs, all of whom will also be required to make the same showings with respect to their divergent claims. Indeed, of the ninety-three claims pled, only two are pled on behalf of all of Plaintiffs, with the vast majority of counts (eighty-three) pled by a single individual. And, as set forth above with respect to Smith's claims, even the claims pled relative to all Plaintiffs (Counts Two and Eight) will require individual factual inquiry and analysis. *Hard Drive Prods. v. Doe*, 2011 U.S. Dist. LEXIS 94319, at *41 (N.D. Cal. Aug. 23, 2011) ("[P]ermitting joinder would force the Court to . . . creat[e] scores of mini-trials involving different evidence and testimony.").

Fundamentally, joinder is inappropriate when, as here, liability is "inextricably bound to the unique details of each interaction." *Strandlund v. Hawley*, 2007 U.S. Dist. LEXIS 27600, at *8 (D. Minn. Mar. 30, 2007), *vacated in part on other grounds*, 532 F.3d 741 (8th Cir. 2008). Plaintiffs' claims should be severed.

> **II.    Even if the requirements of Rule 20(a) were somehow satisfied, the Court should deny joinder based on reasons of economy and fairness.**

Even if Plaintiffs could assert that their claims arise out of the same "transaction or occurrence" with common questions of fact under Rule 20(a), joinder remains inappropriate due to the unfairness and inefficiency of trying all such actions together.

> A. **The joint trial proposed by 100 different Plaintiffs inevitably will result in prejudice, confusion, and inefficiency.**

Any joint trial in this matter would involve a singly jury presiding over the 540 claims of 100 Plaintiffs asserting varied factual grievances to be proved by different evidence. Where different evidence is involved, including different witnesses, so that a single jury could be easily confused, courts have repeatedly held that joinder is improper. *Wynn v. National Broadcasting Co.*, 234 F.Supp.2d 1067 (C.D. Cal. 2002) (holding that joinder of the claims of fifty television writers, even assuming substantial common factual overlap, would create jury confusion, judicial inefficiency, and prejudice to the defendants); *Haleas*, 2010 U.S. Dist. LEXIS 31498, at *8-9 ("Without severance of each plaintiff's claim, a jury would be required to hear evidence and make factual determinations concerning thirteen separate events in one trial. This would likely be confusing to the jury, prejudicial to defendants, and undermine any other economies in litigation that may come from allowing joinder of plaintiffs."). Likewise, where a jury's hearing different evidence may prejudice the defendant and "deflect the jury's attention from the merits of each individual plaintiff's claim," those claims should be severed. *Lover*, 248 F.R.D. at 323 (quoting *Klimaski v. Parexel Int'l*, 2005 WL 857350, at *2 (E.D. Pa. Jun. 24. 2005)); *see also Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989) (granting separate trials following initial joinder due to potential prejudice in the minds of the jury associated with the admissibility of certain evidence), *aff'd on other grounds*, 899 F.2d 183 (2d Cir. 1990).

This Court has previously considered such concerns in the analogous context of Fed. R. Civ. P. 23. In *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742 (4th Cir. 1998), the Fourth Circuit affirmed the Court's decision to decertify an employment-discrimination class action. *Id.* at 753. The plaintiffs accused Circuit City of engaging in pattern or practice of discrimination that resulted in adverse employment treatment of class members. *Id.* at 749. The plaintiffs indicated that evidence on forty-three class members would be presented at trial to show the

pattern and practice, and that approximately 200 persons would be included in the class. *Id.* at 754. To promote manageability of the trial, plaintiffs proposed a bifurcated proceeding where class-wide issues, including punitive damages, would be decided first in a class action trial, and individual damages issues would then be decided in a second set of trials, one for each class member. *Id.*

In denying class certification, the district court determined that this trial procedure would be unfair and inefficient. *Id.* at 754. In particular, the district court focused on the overlap in evidence in the two phases, which could cause prejudice to the defendant and undercut any alleged efficiency savings. *Id.* The Fourth Circuit then affirmed the decertification decision on the basis that the district court had legitimate concerns that the class would be "unwieldy and unfair to Circuit City." *Id.* at 758.

In this action, there can be little doubt of the substantial risk of confusion and unfair prejudice if a single jury is allowed to hear all 100 Plaintiffs' claims in a single proceeding. For instance, evidence regarding Defendants' allegedly harassing telephone conduct is irrelevant to the evaluation of the claims of the Plaintiffs who have made no such allegation. Yet, the jury would be exposed to all such testimony. Similarly, evidence regarding the TCPA claims pled by eight Plaintiffs has no bearing on the FDCPA claims pled by the other ninety-two Plaintiffs. And, even among those Plaintiffs asserting the same causes of action, the specific facts regarding Defendants' collection of one Plaintiff's debt have no relevance to the proof of any claims with respect to the entirely unrelated debt of a different Plaintiff. Such circumstances raise the very real potential for bias and unfair prejudice to Defendants, and such a trial should not be allowed. *See, e.g.*, *Wynn*, 234 F.Supp.2d at 1067 (denying joinder of fifty plaintiffs due to inevitable prejudice to the defendants); *Ismail*, 706 F. Supp. at 251 (granting separate trials due to potential prejudice in the minds of the jury associated with the admissibility of certain evidence).

Also, the potential for jury confusion when a jury is forced to assess evidence and damages with respect to 100 Plaintiffs and 540 claims is obvious and cannot be undone. *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 517-18 (N.D. Il. 2000) ("A single trial would require the jury to keep separate each plaintiff's individualized claim . . . presenting the jury with the 'hopeless task' of trying to discern who did and said what to whom and for what reason."). In contrast, no obvious prejudice would result to Plaintiffs by simply requiring them to litigate their claims in individual trials.

Because of the inherent confusion that the jury would endure in distilling commingled evidence of 100 Plaintiffs, and the prejudice that could result to Defendants in jointly defending such claims, the Court should grant Defendants' Motion to Sever Plaintiffs' claims into separate civil actions.

**B.      Logistical concerns militate strongly in favor of severance.**

There is no question that if the varying and individualized claims of the 100 plaintiffs in this case are permitted to proceed in a single action the result will be an unwieldy, exceedingly-lengthy, confusing and prejudicial trial. There are a host of unanswered questions as to how such a trial would, logistically work, including but certainly not limited to: (1) in what order Plaintiffs will be tried and why; (2) how such a lengthy trial can be completed in a reasonable time to accommodate the many other litigants needing the Court's attention; (3) whether 100 separate jury instructions or jury verdict forms would be used; (4) to what extent evidence introduced for one Plaintiff can be used with respect to another Plaintiff; (5) when and how expert testimony will be introduced and made clear to which Plaintiff it applies; and (6) how the jurors can meaningfully recall testimony relative to 100 individual Plaintiffs that was given weeks or months prior to their deliberations.

In light of the many logistical impediments to an efficient disposition of a joint action, the cases should be severed. *See, e.g.*, *Acevedo*, 600 F.3d at 522 ("However, assuming *arguendo* that Allsup's company-wide policies allow Appellants to satisfy Rule 20's transaction test, denying joinder in this case would still not be an abuse of discretion. In this case . . . the plaintiffs work or have worked across a network of more than 300 stores, each with its own manager responsible for implementing Allsup's policies. The district court was within its wide discretion to conclude that trying these claims together would be too challenging logistically, given the divergent working conditions at each store and the different defenses applicable to each plaintiff's claims."); *Hard Drive Prods.*, 2011 U.S. Dist. LEXIS 94319, at *41 ("[P]ermitting joinder in this case would undermine Rule 20(a)'s purpose of promoting judicial economy and trial convenience because it would result in a logistically unmanageable case."); *Berthelot v. Am. Postal Workers Union, Local 185*, 2010 U.S. Dist. LEXIS 118788, at *27 (S.D. Tex. Nov. 8, 2010) ("Even if Plaintiff could satisfy the two-pronged test under Rule 20(a)(1), the Court concludes that joinder would not be warranted because judicial economy would not be served by adding those employees listed or discussed in Plaintiff's Motion (as well as those as yet unnamed plaintiffs who continue to contact Plaintiff's counsel) in order to adjudicate these highly individualized claims on any kind of joint basis."); *Lowery*, 158 F.3d at 753-58 (affirming the trial court's finding that a single proceeding would be "cumbersome and inefficient," and that the benefits of class certification -- accelerated and efficient disposition -- would not necessarily follow in the case, but "unfairness to Circuit City would be a likely result.").

Thus, this Court should sever each Plaintiff's claim and dismiss all but a single Plaintiff's claims without prejudice. *See e.g.*, *Ravin*, 2007 U.S. Dist. LEXIS 33, at *18 ("[T]he Court concludes that these Plaintiffs are improperly joined in this single action and that this action may

proceed with only one Plaintiff. All other Plaintiffs will be dismissed from this action without prejudice to refile their claims as individual cases.").

### III. Severance of the claims into 100 individual actions will not prevent the efficient adjudication of Plaintiffs' claims.

The severance of Plaintiffs' claims will not result in unduly delayed adjudication. Defendants have already proposed an ambitious discovery plan to Plaintiff's counsel, which can also be followed on an individual basis to ensure that all claims are resolved in an expedient manner. Defendants are committed to actively working with both the Court and Plaintiffs to ensure the timely resolution of their claims, notwithstanding the necessity of severance.

### CONCLUSION

WHEREFORE, Defendants, Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc., respectfully request that the Court: (1) grant their Motion to Sever, ordering separate trials for each of the named Plaintiffs and dismissing without prejudice all but one of the named Plaintiffs; and (2) grant Defendants any such further relief that the Court deems appropriate.

                                              ENCORE CAPITAL GROUP, INC.,
                                              MIDLAND FUNDING, LLC and
                                              MIDLAND CREDIT MANAGEMENT, INC.


                                              By:/s/ Timothy J. St. George_____
                                                          Of Counsel

David N. Anthony (VSB No. 31696)
Timothy J. St. George (VSB No. 77349)
*Attorneys for Encore Capital Group, Inc., Midland Funding, LLC*
*and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-5118
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com

John C. Lynch (VSB No. 39267)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC
and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
 john.lynch@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September 2011, I filed a true and correct copy of the foregoing on the Court's Electronic Case Filing System, which will send a notice of electronic filing to:

>Leonard A. Bennett, Esq.
>CONSUMER LITIGATION ASSOCIATES, P.C.
>12515 Warwick Boulevard, Suite 201
>Newport News, VA 23606
>Telephone: (757) 930-3660
>Facsimile: (757) 930-3662
>Email: lenbennett@cox.net
>
>Matthew J. Erausquin, Esq.
>CONSUMER LITIGATION ASSOCIATES, P.C.
>1800 Diagonal Road, Suite 600
>Alexandria, VA 22314
>Telephone: (703) 273-6080
>Facsimile: (888) 892-3512
>Email: matt@clalegal.com
>
>*Counsel for Plaintiff*

>/s/Timothy J. St. George
>Timothy J. St. George (VSB Bar No. 77349)
>*Attorney for Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc.*
>TROUTMAN SANDERS LLP
>1001 Haxall Point
>Richmond, Virginia 23219
>Telephone: (804) 697-1254
>Facsimile: (804) 698-6013
>tim.stgeorge@troutmansanders.com