## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| KATHY ADKINS, et al. )| |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:11cv334 |
| ) | |
| ENCORE CAPITAL GROUP, INC., et al. ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### PLAINTIFF'S OPPOSITION TO
### DEFENDANTS' MOTION TO SEVER

The Plaintiffs are entitled to proceed under Fed. Rule Civ. P. 20 because they have fulfilled all the requirements establishing permissive joinder and that it is an efficient, expeditious and just way to proceed.  In order to join in one action, Plaintiffs must show that there are common questions of law or fact arising out of the same series of transactions or occurrences.  Defendants have not demonstrated that it is either proper or required to sever the Plaintiffs claims into 100 separate cases.  In fact, to do so would result in the inefficiency, expense, delay and even legal prejudice that Rule 20 was enacted to avoid.  Whether a case is properly joined is determined on a case-by-case basis to permit reasonably related cases to be tried by or against different parties in a single proceeding.  *Advamtel, LLC v. AT&T Corp.,* 105 F.Supp.2d 507, 514-15 (E.D.Va. 2000).

Nothing illustrates the propriety of joinder in this case more than envisioning the practical effect of what would happen if the Defendants' motion were to be granted. While the Defendants' motion focuses solely on the issue of trial, the court will be

mindful of the litigation that takes place at every step from the filing of the complaint to the presentation of a case on its merits to a jury.

First, if this case were severed, the Clerk's office would soon be flooded with one hundred new complaints based on the same facts against these very Defendants, with hundreds more to follow.  Each judge would be assigned his share of the cases, and each judge would consider whether and how to assign pre-trial matters to the magistrate judges or obtain the Defendants consent to magistrate jurisdiction in each case.  The Defendants would immediately file one hundred new motions to dismiss, regardless of whether they would be well-founded.  Nonetheless, Defendants would churn out the same arguments in each case thus causing one hundred new dispositive motions to be added to the court's docket.  The Defendants would protract and oppose the discovery it is obligated to produce, thus necessitating a motions practice to rule on the same objections to the same discovery requests in every case.  The Defendants will insist on a protective order that enables it oppose the use of the exact same documents, depositions, and answers to interrogatories in every single case, thus requiring replication of discovery. Each Plaintiff will be amenable to settlement, but it will likely necessitate the assistance of the court to actually settle any case individually, despite the identity of facts and law. Some of the cases will likely be settled. Some will proceed, thus will likely involve cross-motions for summary judgment to be decided by the court.  For the cases that are not resolved by compromise or dispositive motion, a jury trial will go forward.  Not only will jury trials require preparation for final pretrial conferences by the litigants and the court, it will require the preparation, expense and inconvenience of scheduling jurors from the federal jury pool.  Then, there is the trial itself.  The process doesn't end with a verdict because

the Defendants will file post-trial motions, including motions for a new trial and

regardless of the amount of the jury's award to the plaintiff, they will move for a

remittitur.  Ultimately, the Defendants will appeal the jury verdicts and damages awards.

Once these cases are on appeal to the Fourth Circuit, the treadmill may slow down.

Just by this illustration alone, it is apparent that this motion to sever presents the

very scenario that Rule 20 seeks to avoid. The Court should deny Defendants' Motion to

Sever.

## I.    The Plaintiffs Demonstrate Joinder is Proper Under Rule 20

### a.    Rule 20 should be construed liberally in light of its purpose.

The purpose of Rule 20 is "to promote trial convenience and expedite the final

determination of disputes, thereby preventing multiple lawsuits."  *Hanna v. Gravett*, 262

F.Supp.2d 643, 647 (E.D.Va. 2003).  "Accordingly, the court must determine whether

judicial economy will be aided by joinder."  *Id.*  It is within the sound discretion of the

court to sever even if the party seeking joinder has established a common issue of law or

fact arising from the same series of transaction or occurrences if joinder would not

promote judicial economy or, more importantly, would legally prejudice either party.  *Id.*

There is no question but that Plaintiffs have established all of the requisite

elements to permit joinder, including that it serves the interest of judicial economy and

would not prejudice either party.  Defendants have failed to establish legal prejudice and

urge a result antithetical to the purpose of the Rule, which is to allow "the broadest

possible scope of action consistent with fairness to the parties; joinder of claims, parties

and remedies is strongly encouraged." *Un. Mine Workers of Am. v. Gibbs*, 282 U.S. 715,

724 (1966).

3

### b.      Common issues of law or fact far outweigh any differences.

Contrary to Defendants' argument, *any* common issue fact *or* law is sufficient to establish proper permissive joinder under Fed. R. Civ. P. 20.  *Sanford v. Virginia*, No. 3:08CV835, 2009 WL 1765769 (E.D. Va. June 22, 2009); *accord Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983). In fact, only one common question of law or fact needs to be present to permit joinder.  *Cole v. Mcneely,* 3:11CV130, 2011 WL 3730117 (E.D.Va. Aug. 23, 2011); *accord*, 25 Fed. Proc. L.Ed. § 59:181.  Defendants' memorandum trains its sight on the facts that distinguish one plaintiff from another, rather than the consistent and overarching common facts alleged in the Amended Complaint giving rise to the legal questions in the causes of action.  In this case, all the facts relate to Defendants' practices in collecting from these Plaintiffs alleged consumer credit debt acquired from third parties. In fact, the threshold to meet the common issue of fact or law is a low one where claims are held to be "reasonably related if the plaintiff alleges more than distinct and unrelated acts by unrelated defendants." *Sanford v. Virginia*, 2009 WL 1765769, at *4.

In addition to the fact that Defendants grossly exaggerate, by presentation more than substance, the differences in the claims of each Plaintiff, the Defendants also misstate the facts as pled.  For instance, they assert that there are "ninety-three alleged causes of action" and "[a]ll told, 540 claims have been pled against Defendants."  (Defs.' Mem. at 1).  The Amended Complaint indeed is precise beyond that required by Fed. R. Civ. P. 8 in order to reduce the possibility of confusion with respect to the causes of action held by each plaintiff.  The exaggeration is important only because it is used by Defendants to make it seem like there are going to be 540 distinct claims, with distinct

facts and evidence that need to be individually tried, which is not true at all.  Despite the presence of overwhelming common issues of fact and law, the Plaintiffs have gone to great length to organize the Amended Complaint to effectively assert the facts as they relate to each plaintiff, to group the claims into logical categories, and even to number the plaintiffs for ease of reference.  (Am. Compl., *passim*)(Docket No. 18). The crucial, operative facts that establish Defendants liability are common to every single plaintiff.  Some facts are common to sub-sets, which facts may go to establish damages or additional causes of action.

Rather than argue that the disparate issues outweigh the common ones, Defendants refuse to acknowledge any commonality at all.  Instead, Defendants assert that "[a]lthough Plaintiffs' claims are all asserted against the same Defendants, any substantive overlap ends there." (Defs.' Mem. at 1).  The Defendants memorandum literally begins with a core misstatement upon which it builds its argument, thus undermining any legitimacy that it may have in its position at all.

The case law consistently establishes that identity of issues of law or fact is not required so long as *any* common issue exists. *Sanford v. Virginia*, 2009 WL 1765769, at *2 (emphasis supplied).  In this case, Plaintiffs specifically allege that Defendants misrepresented the amount of the debts it sought to collect, failed to accurately identify themselves as a debt collector and also excessively called consumers and third parties such as family members and co-workers. These facts give rise to common issues of law as well, which is whether the activities by the Defendants violated (1) the federal statutes designed to prevent and punish illegal activity by debt collectors and (2) state statutes that provide relief for injuries caused by Defendants' tortious acts.  These are not abstract

ideas or conclusory allegations, these are facts common to all the Plaintiffs giving rise to

federal and state causes of action and are so specifically pled in the Amended Complaint.

For example:

(1)     Defendants are debt collectors, one and all, that operate as a single entity
        for the sole purpose of collecting debts bought in bulk from third
        parties.  (Am. Compl. ¶¶ 7-19).

(2)     Every single consumer plaintiff has the same claim against Defendants
        regarding their practice of attempting to collect money from the
        plaintiffs by (i) suing consumers in Virginia state courts using a
        fraudulent affidavit, including improperly stapling a document to
        Midland's affidavit after the affiant signed the affidavit and upon
        which the affiant did not rely; (ii) using the state court proceeding
        to cause consumers to pay upon the mistaken belief that
        Defendants can prove their case.  (Am. Compl. ¶¶ 20-45).

(3)     Defendants send these written communications without any of the
        statutory language required when attempting to collect a debt.
        (Am. Compl. ¶¶ 31-34; 41-45).

(4)     Defendants obtain judgments based on false affidavits, and afterwards
        continue to call Plaintiffs, their family members, their co-workers
        and other third parties in an attempt to persuade Plaintiffs to pay
        Midland money.  (Am. Compl. ¶¶ 41, 46-97).

(5)     In Count Eight, all plaintiffs allege that the Defendants do not comply
        with the FDCPA § 1692g(a). (Am. Compl. ¶¶ 44-45; 135-138).

(6)     Count One contains the cause of action common to all Plaintiffs, that
        Defendants used false, deceptive and misleading representations or
        means to collect an alleged debt in violation of 15 U.S.C. §
        1692(e).  (Am. Compl. ¶¶99-103).

In this case, the facts pled and legal issues presented thereby not only establish the

requisite commonness required for joinder, but also establish a narrative demonstrating

that Defendants have engaged in a purposeful, systematic and persistent scheme violative

of the federal consumer protection statutes in order to attempt debt collections from consumers.[1] *Sanford v. Virginia*, 2009 WL 1765769, at *2-3.

There is sufficient Fourth Circuit and Eastern District of Virginia case law that supports the conclusion that joinder is proper even where factual circumstances of each transaction differed, as long as there are the same or similar types of violations alleged by multiple Plaintiffs against a defendant just like the Defendants in this case. *Id.; accord Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 618 (4th Cir. 2001)(thoroughly analyzing and distinguishing *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) for the

---

[1] The heart of Plaintiffs' claims are based on these facts, which describe Defendant's established business practice of purchasing debts, usually credit card accounts, from a third party, and illegally attempting to collect the debt either through its agents or other debt collectors, such as debt-collection law firms in Virginia. While not every other Count applies to every Plaintiff, this does not provide a reason to sever any of the claims because the overwhelming commonness and substantial overlap of facts. The Counts are common to all Plaintiffs in that Defendants engaged in the same course of conduct that is the underlying allegations to every single claim.

For example, Counts Two through Four all involve claims based on the specific documents that were attached to the Warrant in Debt for each Plaintiff, while Counts Five through Seven involve claims based on the specific types of documents sent to the Plaintiffs. These are uniform for all Plaintiffs sued by the Midland Defendants through Dominion Law Associates, the firm that handles the overwhelming majority of these cases for Midland. The only other firm that litigates these cases in Virginia – Glasser and Glasser – has a similarly uniform pattern and practice of generating its own litigation documents and "Statements of Account(s)" that violate the law in uniform ways.

Defendants further claim that the abuse claims in Counts Nine through Ninety-Three involve distinct facts for each Plaintiff and so must be tried separately. However, in reality, the facts are identical for the Plaintiffs alleging these claims, in that the Defendants or their agents make abusive telephone calls to Plaintiffs and/or their family members, co-workers, and neighbors in violation of the FDCPA. Midland and their agents also violate the Telephone Consumer Protection Act by using automatic dialers and by calling the cell-phones of consumers with whom they have no existing business relationship, or prior consent. The fact that Defendants may have called one Plaintiff five times and another ten times, or were not always successful in their systematically abusive methods for each and every Plaintiff does not require that every *successful* attempt at violating the law should then be severed from the lawsuit.

purpose of demonstrating that *Saval* did not create a Rule 20 standard and was specific to its facts.  "[I]t is not necessary for each plaintiff to be interested in obtaining all the relief demanded, and it makes no difference that the several plaintiffs have several interests or that some plaintiffs are interested in only some of the claims.  The court may give judgment to one or more plaintiffs according to each plaintiff's respective right to relief." 25 Fed. Proc. L.Ed. § 59:180.   Even where relevant facts "are not common across the parties" joinder is nonetheless proper "so long as any common issue exists between the claims." *Sanford v. Virginia*, 2009 WL 1765769, at *2.

## II.    All claims arise from the same series of transaction or occurrences.

Joinder is permitted when plaintiffs allege the same or similar violations by a Defendant, though each transaction itself was perhaps separate.  *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d at 618 (finding that "factual circumstances differed" but joinder was proper because it is within a court's discretion to join plaintiffs where claims asserted have a high degree of relatedness and are asserted against the same defendant, and joinder does not prejudice the defendant);  *Hanna v. Gravett*, 262 F.Supp 2d. 643, 647 (E.D.Va. 2003)(reasoning that legal economy mandates avoidance of multiple lawsuits where there "is simply no need to relitigate" a common issue). The fact that there may be minor factual variations among the Plaintiffs does not diminish the fact that Defendants engaged in a series of transactions or occurrences common to all the plaintiffs. *Id.*  Again, the Amended Complaint sets forth facts describing a series of transactions and occurrences that *establish liability* and are common to *all* Plaintiffs.

"Joinder is proper if the several plaintiffs allege that there has been a consistent course of dealing or that fraudulent representation affected all parties, even though

numerous separate transactions occurred and each plaintiff may have a separate claim for damages." 25 Fed. Proc. L. Ed. § 59:181 (2011). The Rule contemplates that there may be differences, including separate claims for damages. Throughout the Defendants' brief, they confuse liability with the measure of damages. Once the Plaintiffs establish as a matter of fact not in dispute that the Defendants engaged in the abusive activity alleged, the more individual questions may be the measure of damages for the Plaintiffs for whom actual damages are alleged. Otherwise, the FDCPA and TCPA provide statutory damages where it is difficult to prove actual damages.

For instance, the Amended Complaint alleges that Defendant placed annoying, abusive and harassing phone calls to consumers. (Defs.' Mem. at 8; Am. Compl. ¶¶ 87-89). The substance of each phone call may be interesting or even relevant, it may go to willfulness and damages, but that the Defendant engaged in this practice with respect to multiple Plaintiffs is evidence of a common scheme, transaction or occurrence to use phone harassment to exact money from consumers. The FDCPA provides that courts must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected and the extent to which the debt collector's noncompliance was intentional." To establish a claim for telephone abuse, it does not matter that Midland told a consumer a she was a "deadbeat," or another that she "needed to get of their [expletive], stop watching television and figure out how she was going to start paying her bills." Midland suggests that each Plaintiff would have to testify at trial about the content of the abusive call in order to recover, thus requiring severance. (Defs.' Mem. at 9). This

is not the standard provided by the act, thus it cannot be the standard to establish liability in this case, thus the Defendants' argument is without merit.

The series of transactions or occurrences pled in this case are the very type contemplated by the Rule. *See, e.g., Sanford v. Virginia*, 2009 WL 1765769, at *3 (explaining that "[b]y its nature, a series of transactions takes place at discrete times separated by various intervals – the police officers' reading would, in essence, read the word 'series' out of Rule 20."); *accord Evans v. Midland Funding LLC*, 574 F. Supp. 2d 808, 811-12 (S.D. Ohio 2008)(reasoning that because "[t]he claims in this case arise from a series of transactions or occurrences in which the Javitch law firm filed substantially similar complaints for money loaned in Ohio state courts against Evans and Faulk to collect upon debts allegedly owed to corporations which share an address in California. There is a likelihood of overlapping proof and testimony. Accordingly, the Court will deny the Motion for Severance"). It is apparent that the abuses visited upon the Plaintiffs by the Defendants in the attempt to collect money from the Plaintiffs, by using mail, telephone and even court process, is a series of transactions or occurrences intended to be included in Rule 20. *Evans v. Midland Funding LLC*, 574 F. Supp. 2d at 811-12.

III.   **Joinder is especially appropriate in this case to avoid multiple lawsuits, unnecessary expense, delay, and prejudice.**

It is within the court's sound discretion to sever when it determines that joinder is inappropriate because it will cause undue prejudice, expense or delay. *Sanford v. Virginia*, 2009 WL 1765769, at *2. Discretion should be exercised to permit joinder under Rule 20 in order to promote the purpose of the rule, which is to prevent multiple lawsuits. *Aleman v. Chugach Support Servs. Inc.*, 485 F.3d 206, 218 (4th Cir. 2007).

Defendants really get creative to argue that severing these cases would promote judicial economy, prevent multiple lawsuits, prevent delay and avoid unnecessary expense. (Defs.' Mem. at 10-12). Defendants argue that permitting this case to go forward as pled will be unfair and inefficient because a jury would be incapable of understanding and rendering a just decision based on Defendants' flawed "highly individualized" evidence claims. *Id*. at 11. To support their argument, they ignore the relevant case law in this district and circuit, skip right over all of the pre-trial litigation and go straight to the challenges that may be presented by this case at trial.

In order to support this argument, Defendants analogize this case to a case involving the decertification of a class in an employment class action. *Id.; see Lowery v. Circuit City Stores, Inc*., 158 F.3d 742 (4th Cir. 1998), *vacated on other grounds,* 527 U.S. 1031 (1999), *remanded,* 206 F.3d 431 (4th Cir. 2000).

Defendants make the same arguments here that they use to oppose class actions. As a basic premise, Rule 23 class actions and Rule 20 joinder do have similarities, especially among their goals of promoting judicial economy, preventing multiple lawsuits and inconsistent outcomes that would establish incompatible standards for the defendant. However, these rules are, in fact, different in several ways relevant here. Each provides distinct threshold elements and procedures designed to accomplish different judicial goals. A prerequisite for certification under Rule 23 not present in Rule 20, is that common questions of law or fact must predominate. *Williams v. Telespectrum, Inc.,* 3:05CV853, 2007 WL 6787411, at *5 (June 1, 2007). Class certification is also not permitted where damages are individualized, requiring an individual "mini-trial" to establish damages for individual class members. *Id.* In contrast, Rule 20 does not create a

class, it creates a single action where multiple plaintiffs can have their individual cases adjudicated.  Even if common questions do not predominate, and where extensive pre-trial litigation and very complicated trial is expected, joinder will not be defeated. *Sanford v. Virginia*, 2009 WL 1765769, at *4 (citing *Aleman v. Chugach Support Servs., Inc.* 485 F.3d at 218, at n. 5).   In fact, reducing the impact of extensive, duplicative pre-trial litigation and trials is the reason that the rule is in place.  *Hanna v. Gravett,* 262 F.Supp.2d at 648.  To the extent that *Lowery* is even analogous, Defendants' reliance on it should nonetheless be ignored because even in complicated, complex and even confusing cases, a jury can be properly instructed by the court at trial thus mitigating the risk of prejudice.  *Sanford v. Va.*, 2009 WL 1765769, at *4 (explaining that "it is presumed that the jury will be able to follow the instructions given to it" and, "[t]he risk of confusion and prejudice, therefore, is small and does not outweigh the efficiency gains that will be made" by trying the case under Rule 20).  Complexity is not prejudice without more.  *Hanna v. Gravett*, 262 F.Supp.2d at 648.

Next, and possibly more important, it is impossible to ignore the efficiencies created by Rule 20 in every aspect of pre-trial litigation: from filing of the complaint, to the conduct of discovery, promotion of settlement and the inevitable motions practice. There is simply no plausible way that requiring Plaintiffs to file over one hundred individual cases is more efficient than a single action when it comes to conducting the pre-trial matters.

Under Rule 21, where the Defendants here cannot succeed on the efficiency, expense and delay arguments, they must demonstrate that they will suffer legal prejudice if this case is not severed.  *Hanna v. Gravett*, 262 F.Supp.2d. at 647.  They have not even

argued undue legal prejudice but instead "unfair prejudice if a single jury is allowed to hear all 100 Plaintiffs' claims in a single proceeding." (Defs.' Mem. at 12). The Defendants' argument that they would be unfairly prejudiced by a jury hearing multiple cases in a single trial is undergirded by the faulty premise that each case is highly individualized. (Defs.' Mem. at 12). It is not. Furthermore, under the case law in this district and circuit, any possibility of prejudice may be cured by a proper jury instruction. *Sanford v. Va.*, 2009 WL 1765769, at *4 (citing *United States v. Basham*, 561 F.3d 302, 335, n. 5 (4th Cir. 2009) and *Jones v. United States*, 527 U.S. 373, 394 (1999))

The court need not be concerned about a case becoming a runaway train because the court always has the power to manage its cases as it sees fit, including under Rule 20(b), which provides that a court may issue orders as "protective measures." In the context of a case where a plaintiff has joined multiple defendants, a jury may unfairly confuse the actions of the defendants with one another in a single proceeding:

> a court may make such orders as will prevent a party from being embarrassed, delayed or put to expense by the inclusion of a party against whom he or she asserts no claim and who asserts no claims against him or her, and may order separate trials or make other orders to prevent delay or prejudice. This rule recognizes that while a plaintiff has a right to join two or more defendants this does not make it imperative that the claims against all the defendants be determine in a single trial and by a single judgment.

25 Fed. Proc., L.Ed. § 59:199.

If it becomes apparent that any of the issues arise under Rule 20(b), the court may enter the appropriate orders. If the court is concerned at the outset, it may establish a pretrial order of its design to monitor the progress of the case on any issue of procedure or substance.

Again, it is the Defendants' failure to carry their arguments to their logical conclusion that causes it to make the statement, "there is no question that if the varying and individualized claims of the 100 plaintiffs in this case are permitted to proceed in a single action the result will be an unwieldy, exceedingly-lengthy, confusing prejudicial trial." (Defs.' Mem. at 13).  First of all, the argument fails to consider that there is a pre-trial practice at all.  In the course of most pre-trial practice, cases may settle or otherwise may be decided in part or in whole on dispositive motions.  It is difficult to contemplate any person who would seriously argue that it is less wieldy and logistically neater to prosecute, defend and preside over 100 individual cases, filed and given 100 individual case numbers, assigned to four district judges and two magistrate judges, who will conduct 100 pretrial conferences, read, hear and decide what is sure to be hundreds of motions, issue hundreds of court orders, require hundreds of additional hours by court personnel, generate hundreds of unnecessary and duplicative discovery requests, answers, objections and challenges.  And that's just among the parties and the court.  Third parties will also be affected because the numerous cases will definitely require hundreds of jurors and may involve numerous third parties to supply documents requested by subpoena and testify in depositions.  Plaintiffs assert conservatively these logistical estimates, especially since they have alleged hyperbole by the Defendants.

To the extent that Defendants make an un-hyperbolized point, if after all the discovery is completed, the cross-motions for summary judgment have been decided, and any unsettled claims remain, the court may assess whether and how to proceed at trial in order to prevent any legal prejudice to either party.  If a party is going to suffer inevitably from legal prejudice and is prevented from presenting a claim or defense due to joinder,

the court may, under Rule 21, either *sua sponte* or upon motion, decide in its discretion that Rule 20's purpose is overcome by legal prejudice that cannot be cured and, thus, must be severed.

However, it will likely not be necessary or advised given the mandate of Rule 20 and the court's ability to conduct the trial in a manner it sees fit, including by properly instructing the jury.

### Conclusion

Plaintiffs have clearly met and exceeded the requirements for permissive joinder under Fed. R. Civ. P. 20.  These are not highly individualized cases. This is exactly the type of case envisioned by Rule 20, where Plaintiffs are a group of citizens who have all suffered the same, consistent and systematic violations of the federal consumer protection statutes and Virginia common law by the same Defendants.  To the extent that there are individual damages, some of the Plaintiffs will be entitled to statutory damages while some will recover actual damages.  The rule does not care that damages will be different from plaintiff to plaintiff, it is not a class action.  No, the rule only requires a common issue of law or fact, that the issues arise from the same transaction or occurrence or series of transactions or occurrences, and that joinder will otherwise promote the principle of judicial economy without unfairly prejudicing any party.  The Defendants have failed to demonstrate that the Plaintiffs haves not met their burden under Rule 20 and have failed to demonstrate they will suffer any legal prejudice under Rule 21.  Therefore, Defendants Motion to Sever must be denied.

Respectfully submitted,
**PLAINTIFFS,**

By_____/s/_____
*Counsel for the Plaintiffs*

LEONARD A. BENNETT, VSB #37523
MATTHEW J. ERAUSQUIN, VSB #65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:     (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com

DALE W. PITTMAN, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, Virginia 23803
Tel:     (804) 861-6000
Fax:    (804) 861-3368
dale@pittmanlawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October, 2011, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:


David N. Anthony, VSB#31696
Timothy J. St. George, VSB#77349
Attorneys for Defendants
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Tel:    804-697-1200
Fax:    8046985118
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com


                                               /s/
                                   _____
                                   Leonard A. Bennett, VSB#37523
                                   Matthew J. Erausquin, VSB#65434
                                   Counsel for the Plaintiffs
                                   CONSUMER LITIGATION
                                   ASSOCIATES, P.C.
                                   1800 Diagonal Road, Suite 600
                                   Alexandria, VA  22314
                                   Tel:    703-273-7770
                                   Fax:    888-892-3512
                                   matt@clalegal.com