UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

KATHY ADKINS, *et al.*,

           Plaintiff,

v.                                                     Civil Action No. 3:11cv334

ENCORE CAPITAL GROUP, INC., *et al.*

           Defendants.

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO SEVER

      Defendants, Encore Capital Group, Inc. ("Encore"), Midland Funding, LLC ("Midland Funding"), and Midland Credit Management, Inc. ("Midland Credit Management") (collectively, the "Midland Defendants"), by counsel, submit the following reply memorandum in support of their Motion to Sever pursuant to Fed. R. Civ. P. 21.

### INTRODUCTION

      Plaintiffs make no attempt to address the overwhelming authority cited by the Midland Defendants for the proposition that this action, involving 100 Plaintiffs and 540 separate claims, should be severed. Instead of discussing the knotty procedural issues raised by their ill-founded Complaint, Plaintiffs offer generalized and inaccurate statements such as the following: "[T]he facts are identical for the Plaintiffs . . . in that the Defendants or their agents made abusive telephone calls to Plaintiffs and/or their family members, co-workers, and neighbors in violation of the [Fair Debt Collection Practices Act]." (Mem. Opp. at 7 n.1). This simplistic assertion of substantive overlap is pure *ipse dixit*, and Plaintiffs offer no basis to state that such claims, which address unrelated telephone conversations between different employees and debtors, arise out of a common "transaction or occurrence" except to point to the Midland Defendants' consistent use

of a telephone.  The substance of each such telephone conversation by the express allegations of the Complaint varies, and the remainder of the allegations pled in the Complaint also require highly-individualized proof.  Taken to its logical conclusion, Plaintiffs' erroneous interpretation of the requirements of Fed. R. Civ. P. 20(a) would permit the joinder of any number of claims and plaintiffs in any action against the Midland Defendants based on nothing more than the fact that a plaintiff was contacted by the Midland Defendants at some point in the collection process.

Plaintiffs also make no attempt to respond to the lengthy, illustrative list of legitimate administrative concerns set forth by the Midland Defendants in their brief.  Rather Plaintiffs implicitly admit that their procedure would result in a "very complicated trial," Mem. Opp. at 12, which is the natural and inevitable result of their proposed unwieldy and prejudicial litigation process.  Also, the proffered "efficiency" gains through joinder are illusory, as the parties will still need to perform all of the standard pre-trial litigation and discovery tasks regardless of whether this action is consolidated into a single proceeding.  In addition, Plaintiffs' misguided attempt to vilify the straightforward consequence of severance. *i.e.*, individual trials of each Plaintiff in the ordinary course of litigation, stands in stark contrast to the legitimate and concrete concerns raised by the Midland Defendants, both with respect to trial administration and the risk of prejudice and confusion engendered by Plaintiffs' approach.

Fundamentally, in order to ensure a proceeding that is fair and efficient for all parties, the Midland Defendants' Motion to Sever must be granted, with the Court dismissing the claims of all but one of the Plaintiffs without prejudice.

### STATEMENT OF ALLEGATIONS

In this action, ninety-three counts, 540 individual claims, and 478 paragraphs have been pled against the Midland Defendants.  As set forth in the Midland Defendants' initial brief,

*seventy-eight* of these counts involve claims of individual, harassing telephone conduct under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., and the Telephone Consumer Protection Act ("TCPA").  The allegations of harassing telephone conduct dominate the factual and legal claims set forth in the Complaint, where the substance and frequency of such conversations, including each such telephone conversation, are alleged to be distinct for every single Plaintiff stating such a claim.  (Compl., at ¶¶ 46-98).

Further, seven counts (Nineteen, Twenty-Four, Twenty-Five, Thirty, Thirty-Seven, Fifty, and Sixty-Nine) assert that the Midland Defendants attempted to collect costs and principal that allegedly were not "legally owed" by seven separate Plaintiffs.  An additional six counts, which are pled on behalf of varying subsets of Plaintiffs, allege: (1) misrepresentations regarding the exact dollar amount of the "finance charges" claimed during the debt collection process (Count Two); (2) the attachment of certain "deceptive" or "generic" documents to the warrants-in-debts and affidavits (Count Three and Four); and (3) the failure to provide required debt collection notices on three types of documents (Counts Five through Seven).  All of this conduct implicates collection activity unique to certain individual Plaintiffs' accounts.

Tellingly, of the ninety-three counts pled, only two counts are asserted on behalf of all Plaintiffs.  One of these counts vaguely alleges "false, deceptive and misleading representations or means in connection with the alleged debt from the Plaintiffs" (Count One), and the other count claims that the Midland Defendants "failed to send the Plaintiffs a written notice that complied with the requirements of 15 U.S.C. § 1692g(a) and which informed them of their right to request verification of the debt" (Count Eight).  However, as set forth in greater detail below, even these two counts depend upon a specific review of the collection activities relative to *each Plaintiff*.  Plaintiffs' claims are hopelessly individualized and have been improperly joined.

**ARGUMENT**

**I.      The highly-individualized and "uncommon" nature of the claims of all 100
         Plaintiffs requires the severance of the action under Rule 21.**

Under Rule 20, there must exist common questions of law or fact to establish joinder.
Fed. R. Civ. P. 20(a).  However, a common defendant and/or common legal claims alone are
insufficient to establish joinder.  *See, e.g.*, *Saval v. BL Ltd.*, 710 F.2d 1027, 1031-32 (4th Cir.
1982); *Lover v. District of Columbia*, 248 F.R.D. 319, 320 (D.D.C. 2008).  Therefore, Plaintiffs
must predicate joinder on something more than common claims against the Midland Defendants
under the FDCPA or TCPA, which they cannot do.

**A.      Plaintiffs fail to plead the existence of common questions of fact or law
          sufficient to ground joinder under Rule 20(a).**

In support of their contention of "commonality," Plaintiffs make the following argument:
"Defendants misrepresented the amount of the debts it [sic] sought to collect, failed to accurately
identify themselves as a debt collector and also excessively called consumers and third parties
such as family members."  (Mem. Opp. at 5).  This "broad brush" attempt at claiming
commonality, however, is without merit, as it fails to account for the fact that the resolution of
such themes still requires the existence of *individualized proof*.[1]  And, in such cases, courts have
consistently held that joinder is inappropriate.  *See, e.g.*, *Hard Drive Prods. v. Doe*, 2011 U.S.
Dist. LEXIS 94319, at *41 (N.D. Cal. Aug. 23, 2011) (denying joinder of defendants who
committed online copyright infringement through a file-sharing program because joinder "would
force the Court to . . . creat[e] scores of mini-trials involving different evidence and testimony.").

Likewise, it is established that there is a "complete lack of common questions of fact or
law" when the allegations pled are based "wholly upon the separate acts of the defendant with

---

[1] Indeed, as with any claim of a "misrepresentation," the jury will be required to assess who made the
misrepresentation, the substance of the misrepresentation, and the date of the misrepresentation with
respect to potentially hundreds of separate telephone calls and documents.

respect to each plaintiff." *Smith v. North Am. Rockwell Corp.*, 50 F.R.D. 515, 524 (N.D. Okla. 1970). Stated differently, where claims require "'individualized attention,' they do not involve common questions of law or fact." *Coalition for a Sustainable Delta*, 2009 U.S. Dist. LEXIS 111743, at *7 (E.D. Cal. Nov. 17, 2009). Thus, as courts within the Fourth Circuit have held, "[j]oinder is not appropriate where . . . the claims [of plaintiffs] involve their own 'peculiar circumstances,'" because, as a practical matter, such cases would present multiple "trials confusingly squeezed into one." *Cunningham v. Flowers*, 218 F.R.D. 453, 455 (D. Md. 2003).

To this end, the individualized nature of the proof required for each Plaintiff in this action was set forth in detail in the Midland Defendants' initial memorandum. (Defs' Mem. at 8-10). In particular, the Midland Defendants made this point clear with respect to the claims of one Plaintiff (Rebecca Smith), demonstrating how the resolution of her claims *alone* would require: (1) an inquiry into the nature of the debt collection activity employed by the Midland Defendants relative to her account; (2) a review of all of the documents filed by the Midland Defendants in connection with her collection proceeding; (3) the identification and analysis of the "initial communication" sent to her by the Midland Defendants (4) a full evidentiary analysis of each and every instance of "harassing" telephone conduct; (5) testimony regarding her damages; (6) a review and calculation of the exact amount owed; and (7) an assessment of unique affirmative defenses to her claims. *Id.* The presentation of this evidence alone could take weeks, and it would be difficult, if not impossible, for the jury to keep these facts straight. Plaintiffs choose to ignore all these issues, stating only that the Midland Defendants "exaggerate, by presentation more than substance, the differences in the claims of each Plaintiff." (Mem. Opp. at 4). How the numerous individualized inquiries that would be required to establish even a *prima facie* case for each of Smith's claims are "exaggerated" is, however, left unsaid.

**B.      The claims pled for all 100 Plaintiffs do not make joinder appropriate.**

The individualized nature of this inquiry is in no way changed by the fact that a mere two FDCPA claims (out of a total of ninety-three counts), are asserted on behalf of all 100 Plaintiffs. Count One alleges "false, deceptive and misleading representations or means in connection with the alleged debt from the Plaintiffs" in violation of 15 U.S.C. § 1692e, which has been labeled by courts as the "catch all" provision of the FDCPA. *See, e.g., Donatelli v. Warmbrodt*, 2011 U.S. Dist. LEXIS 69207, at *29 (W.D. Pa. June 29, 2011). The specific nature of this conduct is not set forth by Plaintiffs; a clear indication that Plaintiffs prefer to keep this claim an undefined moving target throughout this action. However, regardless of their content, it is settled that claims under § 1692(e) "are inherently fact specific." *Black v. Asset Acceptance, LLC*, 2005 U.S. Dist. LEXIS 43264, at *9 (N.D. Ga. Dec. 9, 2005). They are not, therefore, subject to mass adjudication.

Count Eight, which is also pled on behalf of all 100 Plaintiffs, asserts that the Midland Defendants "failed to send the Plaintiffs a written notice that complied with the requirements of 15 U.S.C. § 1692g(a) and which informed them of their right to request verification of the debt." (Compl., at ¶¶ 46-98). Any claim under 15 U.S.C. § 1692g(a), however, requires the court to determine whether the initial communication with the debtor was written or oral, identify the date of that communication, and then review a copy of the notice sent to the debtor to determine whether it complies with § 1692g(a), including each of the five enumerated subsections. *Id.* The accrual one the one-year statute of limitations will also vary for each Plaintiff and will have to be individually determined. *Senftle v. Landau*, 390 F. Supp. 2d 463, 473 (D. Md. 2005) ("there is only one 'initial communication' with a debtor on a given debt under 1692g(a)" for purposes of assessing the accrual of the statute of limitations). This entire process would have to be repeated

100 times in this action.  Hence, even though pled on behalf of all Plaintiffs, the resolution of each individual claim under Counts One and Count Eight is inextricably bound to the particular facts of each Plaintiff.  *See, e.g.*, *Strandlund v. Hawley*, 2007 U.S. Dist. LEXIS 27600, at *8 (D. Minn. Mar. 30, 2007) (finding a lack of commonality when liability was "bound to the unique details of each interaction").  Joinder is thus improper.

### C.   The authority cited by Plaintiffs does not support their position.

Furthermore, without any reference to the specific facts of the case, Plaintiffs repeatedly cite to the decision in *Sanford v. Virginia*, 2009 U.S. Dist. LEXIS 52777 (E.D. Va. June 22, 2009), as somehow supporting the joinder of their claims.  That decision, however, is entirely distinguishable from the claims asserted by Plaintiffs, and in fact counsels in favor of severance here.  In *Sanford*, the court considered joinder of two defendants who were alleged to have acted in concert with the previously-joined defendants with respect to the acts surrounding the death of the plaintiff.  *Id.* at *8-9.  In permitting joinder, the court held:

> In addition to being related persons, the allegedly tortious actions of Wright and Bolling are connected to those of both the police officers and the MCV defendants. Wright and Bolling allegedly acted to prevent the Plaintiffs from learning the true circumstances of Sanford's death, including the rough handling committed by the police officers and the unauthorized intubation conducted by the MCV defendants.  The object of this alleged cover up can reasonably assumed to have been to deflect the Plaintiff's suspicion respecting Sanford's death.  This allegedly tortious action, therefore, was certainly logically and reasonably related to the incident that caused Sanford's death: it was, allegedly, a fraud committed in order to preserve the secrecy of an earlier wrong committed by other employees of the same employer.  Claiming that such an act is inherently divorced from that underlying wrong is unreasonable.

*Id.*  The distinction between *Sanford* and the present matter is clear.  In *Sanford*, the allegations pled against the putative defendants related to one incident implicating all of the defendants, including those sought to be joined to the lawsuit.  Here, there is no allegation that the Midland Defendants' collection activity relative to any one Plaintiff was related to the collection activity

of any other Plaintiff.  Thus, the "logical and reasonab[le]" relationship among the parties that permitted joinder in *Sanford* is absent here.

Similar logic also readily distinguishes the other case frequently cited by Plaintiffs, *Hanna v. Gravett*, 262 F. Supp. 2d 643 (E.D. Va. 2003), which considered a claim against both the driver of an automobile and an insurance carrier with respect to a single car accident.  In permitting the joinder of the defendant driver, the court held: "[T]here are facts common to both defendants.  The legal obligations of both defendants are based upon a factual showing of Gravett's negligence.  Finally, the extent of Hanna's damages will have a bearing on the extent of each defendant's liability."  *Id.* at 647.  Again, no such overlap exists among the discrete claims of each Plaintiff in this matter, rendering joinder inappropriate.

**II.      Plaintiff's claims do not arise out of the same "transaction or occurrence."**

A further requirement for joinder under Fed. R. Civ. P. 20 is that the claims arise out of the same "transaction or occurrence." *Id.*  "Courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court."  Charles Alan Wright, *et al.*, 7 FED. PRACT. & PROC., CIV. 3rd § 1653 at 411-12 (2001).  The Fourth Circuit has stated that the transaction or occurrence test of Rule 20 permits "reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Saval* 710 F.2d at 1031.  With respect to this requirement, Plaintiffs assert the following argument: "[T]he abuses visited upon the Plaintiffs by the Defendants in the attempt to collect money from the Plaintiffs, by using mail, telephone and even court process, is a series of transactions or occurrences intended to be included in Rule 20."  (Mem. Opp. at 10). This argument fails for numerous reasons.

In *Saval*, the Fourth Circuit applied the "transaction or occurrence" test in the context of an analogous case involving automobile defects, holding that the test had not been met:

> We conclude that the allegations of fraud and common warranties do not satisfy the "transaction or occurrence" test.  As the district court found with respect to the fraud claims, "the only basis for presale allegations of fraud in this case consists of advertisements and warranties similar to those made by every automobile manufacturer who sells automobiles in this country."  To accept appellants' argument would be to open the federal courts to every claim involving products purchased from large manufacturers, simply through the device of alleging that all consumers relied on the companies' advertising.  Similarly, every purchaser of a given product could join with every other purchaser, even if the products suffered from different defects, on the basis that a common warranty was given as to each product.

*Saval*, 710 F.2d at 1031-32.  On this basis, the Fourth Circuit affirmed the district court's denial of joinder.  *Id.*

Similarly, under Plaintiffs' overly-broad interpretation of Rule 20(a), joinder would be proper with respect to any potential plaintiff's claims against the Midland Defendants simply by virtue of the fact that they too were the subject of debt collection activity by the Midland Defendants, notwithstanding the untold factual differences with respect to each plaintiff's claim. Such an argument is inconsistent with the requirements of Rule 20(a).[2]  *See id.; see also Woltz v. Bailey*, 2009 U.S. Dist. LEXIS 73652, at *3 (W.D.N.C. Aug. 11, 2009) ("No one transaction, occurrence, or series of transactions or occurrences is common to all Defendants.  Each individual alleges separate and distinct medical issues [at the same location].  Moreover, the issue of actual injury will be separate and distinct for each plaintiff."); *In re Rezulin Prods. Liab. Litig.*, 168 F Supp.2d 136, 144 (S.D.N.Y. 2001) (finding misjoinder because plaintiffs, who ingested the same drug, had different exposures, injuries, and medical histories).

---

[2] Indeed, under Plaintiff's argument, there literally would be no limit to the number of divergent factual allegations and/or plaintiffs that could potentially combine under Rule 20(a).  Not only is this argument contrary to the requirements of Rule 20(a), the endorsement of such an argument could create severe docket management issues for courts going forward, as detailed, *infra*, with respect to this action, with plaintiffs finding it to be to their advantage to proceed in this "mass action" form.

This conclusion is buttressed by the secondary authority cited by Plaintiffs.  Plaintiffs cite to the "Federal Procedure, Lawyer's Edition" treatise for the contention that a fraudulent "course of dealing" can validate joinder.  (Mem. Opp. at 8-9).  In making this argument, however, Plaintiffs simply omit the remainder of this paragraph, which reads:

> However, the mere fact that plaintiffs allege that they have been defrauded in similar transactions with respect to similar investments is not enough to justify their joining as plaintiffs under FRCP 20(a), particularly where nothing in the complaint even hints at any linkage between the plaintiffs or between the making of separate representations to each.
>
> ***
>
> This rationale has been used to deny joinder in libel cases, with the court observing that each party's damages may be dependent upon different considerations and may vary in degree, to an extent that the questions presented are not sufficiently common to permit joinder.  This rule may also bar joinder of plaintiffs in franchise litigation, where each franchise agreement was negotiated separately, and there was no common source or single event which produced the damages claimed by the various plaintiffs.

25 Fed. Proc. L. Ed. § 59:181 (2011) (collecting cases).  This important caveat, conspicuously omitted by Plaintiffs, closely mirrors the discrete nature of the challenged transactions here. Therefore, joinder is improper under Rule 20(a).[3]

### III.   Even if the requirements of Rule 20(a) were somehow satisfied, the Court should deny joinder based on reasons of economy and fairness.

To the extent that considerations of judicial economy and fairness factor into the court's decision to sever, "they do so only after the plaintiff has first satisfied the requirements of Rule

---

[3] This conclusion is also not altered by Plaintiffs' allegation in their briefing (which is not set forth specifically in any of their substantive counts) that "fraudulent" affidavits were used against Plaintiffs during collection actions, *see* Mem. Opp. at 6, as the resolution of whether an affidavit executed by the Midland Defendants was "fraudulent" would require a review of the precise content of each affidavit and/or testimony from the employee affiant describing the documents that he or she reviewed prior to the execution of the affidavit.  Again, Plaintiffs are seeking to broadly establish joinder on the basis of their *generally* being subject to debt collection activity by the Midland Defendants, which alone is insufficient under Rule 20(a).  *See, e.g., DirecTV, Inc. v. Boggess*, 300 F. Supp. 2d 444, 449 (S.D. W. Va. 2004) (piracy claims against ten parties were not transactionally related under Rule 20(a) when the only factual connection was that all such parties had bought pirated devices from same internet retailer and devices were all were allegedly used to intercept same satellite signal).

20(a)." *Colt Def. LLC v. Heckler & Koch Def., Inc.*, 2004 U.S. Dist. LEXIS 28690, at *16 (E.D. Va. Oct. 22, 2004).  And, as the Supreme Court has held, the prescriptions of Rule 20 are always subservient to the requirement that the litigation process be "fair" to all of the parties.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) (joinder is permitted only if it is "consistent with fairness to the parties").  Accordingly, assuming *arguendo* that Plaintiffs could satisfy the strictures of Rule 20(a), joinder remains inappropriate here due to the unfairness and inefficiency of trying all such actions together.

**A.    The joint trial proposed by 100 different Plaintiffs inevitably will result in prejudice, confusion, and inefficiency.**

Plaintiffs do not dispute that, in assessing both liability and damages, the jury in this action would be required to return separate verdicts on the 540 separate claims of 100 Plaintiffs. This complexity is compounded by the fact that, in rendering such decisions, the jury would be required to recall and analyze testimony relating to myriad telephone calls and documents, along with evidence regarding the varying types of purported damages of each Plaintiff.  In recognition that such a process would simply overwhelm even the most careful jurors, courts have denied joinder on this basis in the context of *far less* cumbersome and complex cases.  *See e.g.*, *Wynn v. National Broadcasting Co.*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002) (holding that joinder of the claims of fifty television writers, even assuming substantial common factual overlap, would create too much "confusion" in the minds of the jury); *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 517-18 (N.D. Ill. 2000) ("A single trial would require the jury to keep separate each [of the five] plaintiff's individualized claim[s] . . .  presenting the jury with the 'hopeless task' of trying to discern who did and said what to whom and for what reason.").

Also, the prejudice suffered by the Midland Defendants in such a joint trial would be severe and irreversible.  To use but one example, to which Plaintiffs offer no response, evidence

regarding the Midland Defendants' allegedly harassing telephone conduct is simply irrelevant to the evaluation of the claims of the numerous Plaintiffs who have made no such allegation. Yet, the jury would be exposed to all such testimony throughout the trial process. Under any conceivable standard, this procedure will prejudice the Midland Defendants and "deflect the jury's attention from the merits of each individual plaintiff's claim," requiring severance. *See, e.g.*, *Lover*, 248 F.R.D. at 320 (quoting *Klimaski v. Parexel Int'l*, 2005 WL 857350, at *2 (E.D. Pa. Jun. 24. 2005)); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742 (4th Cir. 1998) (affirming decision of Hon James R. Spencer that the presentation of evidence regarding forty-three class members would be unfair and inefficient); *United States v. Hassoun*, 477 F. Supp. 2d 1210, 1229 (S.D. Fla. 2007) ("In this instance, this Court is not convinced that even a fair and reasonable juror could undeniably avoid an evidentiary spillover [with respect to the divergent claims against the co-defendant] that could potentially poison the well of pure unbiased thought."); *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989) (granting separate trials following initial joinder due to potential prejudice in the minds of the jury associated with the admissibility of certain evidence), *aff'd on other grounds*, 899 F.2d 183 (2d Cir. 1990).[4] In contrast, no prejudice would result to Plaintiffs by simply requiring them to litigate their claims in individual trials in the ordinary course of litigation.

---

[4] Remarkably, Plaintiffs appear to tout the possibility for inflaming the passions of the jury as a benefit of their proposed approach, stating: "The substance of each phone call may be interesting or even relevant, it may go to willfulness and damages, but that the Defendant engaged in this practice with respect to multiple Plaintiffs is evidence of a common scheme, transaction or occurrence to use phone harassment to extract money from consumers . . . . [And], to establish a claim for telephone abuse, it does not matter that Midland told a consumer she was a 'deadbeat,' or another that she 'needed to get off their [expletive], stop watching television and figure out how she was going to pay her bills.'" (Mem. Opp. at 9). These arguments give a troubling preview of the (highly-contested) testimony that Plaintiffs' counsel intends to put on regarding individual Plaintiffs, as well as insight into Plaintiffs' intent to simply gloss over the key factual distinctions between each Plaintiff's claims.

In response to these concerns, Plaintiff proposes that "any possibility of prejudice may be cured by a proper jury instruction." (Mem. Opp. at 13). Not only does Plaintiff fail to propose what this jury instruction would (or could) be, this proposal stands in derogation of the settled principle that "a cautionary instruction is not sufficient" where the testimony "is likely to make a sufficiently strong impression on the jury that it will be unable to disregard it." *United States v. Sands*, 899 F.2d 912, 915 (10th Cir. Okla. 1990); *see also United States v. Murray*, 784 F.2d 188, 189 (6th Cir. 1986) (a jury instruction under such circumstances is "very close to an instruction to unring a bell"); *Hassoun*, 477 F. Supp. 2d at 1229 ("A jury charge directing that any defenses posed with regard to the falsity counts not be considered when deciding upon the material support and conspiracy counts will not ameliorate the problem."). Simply put, there is no way that a jury instruction can fix all of the problems associated with trying 100 separate cases within one trial. Consistent with the foregoing authority, Plaintiffs' non-descript proposal in this regard is entirely inadequate.[5]

### B.   Logistical concerns require severance.

As noted above, Plaintiffs fail to confront any of the case-manageability issues raised by the Midland Defendants regarding the scheduling and order of trial, as well as the process for ensuring that the jury delivers a fair and just verdict. This silence speaks volumes, particularly in

---

[5] Plaintiff again cites to *Sanford* for his contention that a jury instruction will be sufficient to prevent and/or cure any prejudice to the Midland Defendants during trial. In *Sanford*, however, the court assessed the possibility for jury confusion in the context of the joinder of only *two* additional defendants and *one* additional count. *Sanford*, 2009 U.S. Dist. LEXIS 52777, at *4. That decision, therefore, is orders of magnitude below the confusion and prejudice that would be generated here. Moreover, the court held that "while [the putative defendants] are certainly connected to the police officers through the events surrounding Sanford's death and their respective responses to it, they are also readily distinguishable from the police officers, and vice versa, for purposes of identifying their respective culpability at trial. The risk of confusion and prejudice, therefore, is small, and does not outweigh the efficiency gains that will be made through trying Count 21 with the remainder of the Amended Complaint." *Id.* at *12-13. Unlike in *Sanford*, there is no obvious distinction among the 100 Plaintiffs that would prevent such confusion in this case. Again, despite its citation by Plaintiffs, the decision in *Sanford* militates strongly in favor of severance.

light of the substantial authority cited by the Midland Defendants granting severance due to these concerns.  *See, e.g.*, *Hard Drive Prods.*, 2011 U.S. Dist. LEXIS 94319, at *41 ("[P]ermitting joinder in this case would undermine Rule 20(a)'s purpose of promoting judicial economy and trial convenience because it would result in a logistically unmanageable case.").  At bottom, this Court is left with no conception of how this matter could possibly be litigated in its current form, whether at the pre-trial stage (*e.g.*, will 100 motions for summary judgment be permitted for each party; how can a joint settlement process possibly be conducted in a manner that is fair to all of the parties) or at trial (*e.g.*, whether 100 special verdict forms will be required).  The logistical implications of this action boggle the mind.

Rather than addressing these concerns, Plaintiffs attempt to deflect the Court's attention to the supposed "efficiencies created by Rule 20 in every aspect of pre-trial litigation."  (Mem. Opp. at 12).  This is a complete *non-sequitur* in that any purported pre-trial efficiency does not somehow solve the non-exhaustive list of both efficiency and fairness concerns identified by the Midland Defendants at trial.  In any event, Plaintiffs' argument is simply unfounded.  Regardless of whether the claims are severed, the Midland Defendants will still: (1) propound individual discovery to all of Plaintiffs; (2) depose all Plaintiffs and related third parties; (3) file whatever discovery motions are necessary with respect to each Plaintiff; (4) file dispositive motions with respect to each Plaintiff where appropriate; and (5) engage in individual settlement discussions. In essence, Plaintiff's counsel is arguing that the outcome of the equation of 1 x 100 is somehow different than 100 x 1.

Moreover, any marginal efficiency gains through joinder will be offset by a number of efficiency gains through severance.  For instance, upon severance, pleadings will be filed relating to only one Plaintiff, allowing for sharper identification of the claims and defenses at issue and

far less confusion for the Court in resolving such claims.  The trial dates for each Plaintiff could also be expedited upon severance, with individual trials not having to be delayed until the 100 Plaintiff mass action is finally ready to be tried relative to *every* Plaintiff.  Further, the severance of claims will allow the parties to properly value the individual claims of each Plaintiff for settlement purposes, thereby ensuring that any settlement proposal is commensurate with the potential merits of each Plaintiff's claim (*e.g.*, that it is not completely barred by the applicable statute of limitations), as opposed to the unfairness in trying to value (or settle) such claims *en masse*.  Finally, upon refiling, no one court should be burdened by the individual actions, as many Plaintiffs reside in the other divisions of the Eastern District of Virginia or in the various divisions of the Western District of Virginia, with their claims having no logical nexus to this division.  And, if Plaintiffs' claims are improperly refiled in the Richmond Division of the Eastern District of Virginia, they will be the subject of a motion to transfer venue under 28 U.S.C. § 1404(a).

The remainder of the efficiency concerns identified by Plaintiffs' counsel constitute rank, improper speculation and need not be addressed in detail.  For instance, Plaintiffs' counsel states that, upon severance, "the Defendants would immediately file one hundred new motions to dismiss, regardless of whether they would be well-founded." (Mem. Opp. at 2).  Not only is this claim an improper attack on the credibility of undersigned counsel, it is discredited by the fact that no such motion has been filed here.  Plaintiffs' counsel also predicts that "Defendants would protract and oppose the discovery it is obligated to produce." *Id.*  This is improper and without support.  Additionally, Plaintiffs counsel's baseless theorizing that the "Defendants will file post-trial motions, including motions for a new trial and regardless of the amount of the jury's award to the plaintiff, they will move for a remittitur," *see* Mem. Opp. at 2-3, is pure conjecture and

15

also presupposes that Plaintiffs will prevail at trial.  Rather than focusing on these hypothetical concerns, the Court should direct its attention to the certainty of the unmanageable and prejudicial litigation process proposed by Plaintiffs, which necessitates severance.

### IV.    Severance should be granted on this motion at the pre-trial stage.

In a final attempt to avoid the result compelled by the above authority, Plaintiff suggests that this Court can, "after all discovery is completed," assess whether severance is necessary. (Mem. Opp. at 14).  Plaintiffs make this suggestion due to the asserted pre-trial efficiency gains through joinder.  *Id.*  However, because the "efficiency" gains trumpeted by Plaintiffs in the pre-trial process are largely illusory, whereas real efficiency gains exist from ordering fully separate proceedings from the outset, this suggested delay in the Court's decision to sever should be rejected.  Moreover, the complete severance of Plaintiffs' claims at the outset of the proceedings, as opposed to the delayed resolution of the issue proposed by Plaintiffs, provides the type of certainty desired in complex litigation.  *See*, *e.g.*, 3 MOORE'S FEDERAL PRACTICE at § 16.36[3][c] (2000) (resolving matters regarding pleadings "early in the pretrial period . . . [is] essential to coherent case development [and] planning").  Indeed, because the relevant pre-trial deadlines in this division are keyed off of the trial date itself, the uncertainty created by Plaintiffs' proposal in this regard would be particularly acute.

Additionally, and perhaps most troubling, this argument simply glosses over the many unsettling logistical issues that will also exist in the *pre-trial* stage of this action, which include, *inter alia*: (1) whether 100 motions for summary judgment will be permitted for both sides and how they can be timely resolved to realize the gains of pre-trial disposition; (2) whether 100 settlement conferences will be scheduled, and, if so, whether a single magistrate judge will be burdened with all such conferences; (3) when expert disclosures will be exchanged, and whether

expert reports will be separated by Plaintiff; (4) the timing and coordination in responding to 100 sets of requests for production, 100 sets of interrogatories, and 100 sets of requests for admission in a manner that will permit the timely deposition of each Plaintiff; (5) how potentially dozens of discovery and other critical pre-trial motions can be addressed in a timely manner without overwhelming the Court's docket; (6) how compliance with numerous subpoena *duces tecum* can be enforced within the applicable deadlines; and (7) how 100 separate depositions of individual Plaintiffs, as well as the depositions of an untold number of third party witnesses, can be taken prior to the close of discovery in a manner consistent with the preferred trial schedule within the Eastern District of Virginia.   None of these issues have ready answers except for severance. Accordingly, such a decision need not be delayed, and Plaintiff's claims should be severed on this motion.  *See, e.g., Ravin v. Hockman*, 2007 U.S. Dist. LEXIS 33, at *3 (S.D. Fla. Jan. 3, 2007) (granting severance only two months after filing of Complaint due to foreseeable case manageability issues).

The Midland Defendants are committed to working with Plaintiffs to ensure the timely resolution of their claims, including actively communicating with Plaintiffs' counsel with respect to the severed, individual actions in order to minimize any burdens on both the parties and the Court.   Nevertheless, due to the many logistical impediments to an efficient disposition of the proposed joint action, the cases must be severed, with all but one Plaintiff's claims dismissed without prejudice.   *See e.g.*, *id.* at *18 ("[T]he Court concludes that these Plaintiffs are improperly joined in this single action and that this action may proceed with only one Plaintiff. All other Plaintiffs will be dismissed from this action without prejudice to refile their claims as individual cases.").

## Conclusion

WHEREFORE, Defendants, Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc., respectfully request that the Court: (1) grant their Motion to Sever, ordering separate trials for each of the named Plaintiffs and dismissing without prejudice all but one of the named Plaintiffs; and (2) grant the Midland Defendants any such further relief that the Court deems appropriate.

**ENCORE CAPITAL GROUP, INC.,
MIDLAND FUNDING, LLC and
MIDLAND CREDIT MANAGEMENT, INC.**


By:/s/ Timothy J. St. George_____
                                     Of Counsel

David N. Anthony (VSB No. 31696)
Timothy J. St. George (VSB No. 77349)
*Attorneys for Encore Capital Group, Inc., Midland Funding, LLC
and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-1200
Facsimile:  (804) 698-5118
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com

John C. Lynch (VSB No. 39267)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC
and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile:   (757) 687-1504
 john.lynch@troutmansanders.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of October 2011, I filed a true and correct copy of the foregoing on the Court's Electronic Case Filing System, which will send a notice of electronic filing to:

Leonard A. Bennett, Esq.
Susan Rotkis, Esq.
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 201
Newport News, VA 23606
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
len@clalegal.com
srotkis@clalegal

Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Telephone: (703) 273-6080
Facsimile: (888) 892-3512
matt@clalegal.com

Dale W. Pittman, Esq.
The Law Office of Dale W. Pittman, P.C.
The Eliza Spotswood House
112-A West Tabb St.
Petersburg, VA 23803
Telephone: (804) 861-6000
Facsimile: (804) 861-3362
dale@pittmanlawoffice.com

*Counsel for Plaintiff*

/s/Timothy J. St. George
Timothy J. St. George (VSB Bar No. 77349)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
tim.stgeorge@troutmansanders.com

2099086v1